UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| VICTOR M. THOMPSON, | : | |
| | : | Civil Action No. 09-0908 (SDW)(MCA) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHAEL ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | March 30, 2010 |
| | : | |
| Defendant. | : | |
| | : | |

**WIGENTON,** District Judge.

Before the Court is Plaintiff Victor M. Thompson's ("Thompson" or "Plaintiff") appeal of the Commissioner of Social Security's (the "Commissioner") final decision that Plaintiff is not disabled and therefore not eligible for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 421 *et. seq.* This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Venue is proper in this District under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Local Civil Rule 9.1(b). For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

**i. Employment, Medical and Personal History**

Plaintiff is a 49 year old man who graduated from high school in 1981. (Tr. 54-5.) After high school, Thompson completed a six-month electronics course at the Technical Career Center for Essex County College. (Tr. 55-6.) Upon completion of the course, he retained a job at an electronics store for a few months in the early 1980s. (Tr. 56.) In his most recent job, Plaintiff

1

was employed at Sears Stores in the merchandising department where he assisted customers with items they intended to purchase and generally organized the sales floor.  (Tr. 57.)  Plaintiff began working at Sears on August 30, 2001 and was laid off in February 2005. [1]  (Tr. 57-8.)

In January 2000, Plaintiff was diagnosed with nephrolithiasis and low back pain stemming from his presentation of pain in the neck, right groin, and lower back, as well as bilateral wrist pain and a "pinching and burning sensation in [his] toes."  (Tr. 303.)   In July 2000, Plaintiff was in a motor vehicle accident.  (Tr. 622.)  Plaintiff received MRIs in August 2000 which revealed several herniated discs in his lumbar and cervical spine.  (Tr. 311-12.) Although there was evidence of compression upon the thecal sac, mild posterior annular bulging and loss of normal cervical curvature with torticollis, there was no evidence of cord or direct nerve root compression.  (Tr. 311-12.)   In October 2000, an examination noted Plaintiff's complaints of pain in the right groin for three consistent months and documented dizziness, headaches, shortness of breath with sweating, a herniated disc located in his lower back, nausea, and a yellow phlegm-producing cough.  (Tr. 302, 304.)  Plaintiff's hip and groin pain was consistent throughout November 2000 and seemed to worsen upon sitting and standing.  (Tr. 300-01.)  At this point, Plaintiff was diagnosed with myalgia and received physical therapy three times a week.  (Tr. 300.)  Plaintiff's complaints of back, groin, hip and wrist pain persisted through December 2000.  (Tr. 298-99.)  Additionally, Plaintiff was diagnosed with carpal tunnel syndrome, confirmed by an EMG; however, his bilateral hip x-ray was normal.  (Tr. 559.)

Plaintiff took Celebrex and Mobic for his pain throughout January and February 2001. (Tr. 296-97.)  In March 2001, Plaintiff presented with renal stones and a slight enlargement of the right kidney, for which a stent was placed through his pelvis.  (Tr. 295.)  He continued to

---

[1] As discussed below, on December 30, 2003, Plaintiff was involved in a motor vehicle accident.  (Tr. 58.)  He was unable to work from the time of his accident until November 2004, at which point he went back to work at Sears. (Tr. 59.)

experience groin pain throughout April.  (Tr. 294.)  In May 2001, Plaintiff was diagnosed with "discogenic disease in the cervical and lumbosacral spine by history, panic attacks, renal stones, and status post stent times three."  (Tr. 624.) (numerical ordering omitted).  From April through August 2001, Plaintiff consistently presented with complaints of pain in his lower back, right groin, neck, right wrist, and right knee.  (Tr. 291-94.)  Although Plaintiff complained of shortness of breath, with intermittent pain on the left side of his chest, EKG testing revealed normal results.  (Tr. 294.)  Routine check-ups in 2002 note that Plaintiff complained of pain due to kidney stones, occasional chest pain and pain on his right side when he sneezed.  (Tr. 290.)

In January 2003, Plaintiff was diagnosed with hypercholesterolemia, arthralgias and myalgia.  (Tr. 287.)  In June 2003, Plaintiff was hospitalized for two days and diagnosed with hyperlipidemia, chest pains and a heart murmur.  (Tr. 288.)  At the end of the year, on December 30, 2003, Plaintiff was involved in a motor vehicle accident and, upon an emergency room examination, was diagnosed with musculoskeletal pain - after x-rays revealed his lumbar and cervical spine were normal.[2]  (Tr. 21, 330-38.)

In January 2004, Plaintiff presented with stiffness and soreness in his head, neck and back, as well as numbness in his wrist, hand, leg and foot.  (Tr. 439-44.)  Plaintiff was diagnosed with neck and thoracic muscle spasms, right knee strains and sprains, and cervical radiculopathy.[3]  (Tr. 443.)  In February 2004, Plaintiff was still experiencing pain in the right leg; numbness in his foot, ankle, leg, and hand; and stiffness and soreness in his head, neck, and back.  (Tr. 423-24.)  One month later, MRIs revealed various abnormalities, including straightening of the normal cervical lordotic curvature and moderate disc bulging.  (Tr. 456-57.)  Plaintiff underwent

---

[2]It is at this point Plaintiff claims he became eligible for disability benefits.  (Pl.'s Br. 1.)
[3]In 2006, Dr. Mark Zablow indicated that "[Plaintiff] had sustained permanent moderate limitation of the uses and function of the affected spinal levels."  (Tr. 642.)

lumbar disc percutaneous decompression nucleoplasty surgery in July 2004 in an attempt to alleviate the pain.  (Tr. 492.)

By February 2005, Plaintiff's back pains appeared to worsen as he claimed that he could only walk approximately two or three blocks, that he could only sit for thirty minutes, and that he could only climb stairs one step at a time when he was tired.  (Tr. 508.)  A physical residual functional capacity report on February 10, 2005 diagnosed Plaintiff with exertional limitations of occasionally lifting or carrying twenty pounds, frequently lifting or carrying ten pounds, sitting or standing for six hours out of an eight hour workday, and postural limitations of frequently climbing ramps and stairs, occasionally climbing ladders, ropes and scaffolds, frequently balancing, stooping, kneeling, and crouching, occasionally crawling, and avoiding concentrated exposure to hazards.  (Tr. 513-20.)  Plaintiff was then diagnosed with lumbar disc disease and lumbar and cervical sprain.  (Tr. 513.)

The following year, in April 2006, Plaintiff presented with kidney stones, pain in his neck, right thigh, the right side of his stomach, and numbness in both legs.  (Tr. 572.)  In June of that year, Plaintiff underwent a left heart catheterization, which resulted in a diagnosis of mild coronary artery disease.  (Tr. 593.)  Another catheterization was performed on Plaintiff in June 2007, confirming that he had mild non-obstructive coronary artery disease.  (Tr. 906-07.)

## ii. Procedural History.

On June 24, 2004, Plaintiff submitted an application for disability insurance benefits for a period starting December 30, 2003.  (Tr. 228-30.)  His application was denied initially on February 14, 2005, and again on reconsideration on April 29, 2005, because Plaintiff's "condition [was] not severe enough to keep [him] from working."  (Tr. 147-52, 155-56.)  At Plaintiff's request, a hearing was held before Administrative Law Judge Michal Lissek (the

"ALJ") on January 25, 2007, at which Plaintiff testified.  (Tr. 46-83.)   The ALJ also sent interrogatories to Rocco Meola ("Meola"), the vocational expert, and Dr. Martin Fechner ("Fechner"), the medical expert.  (Tr. 867-82.)  A supplemental hearing was held on August 28, 2007 before the ALJ, at which Meola and Fechner testified.  (Tr. 86-121.)   After Plaintiff underwent additional diagnostic tests, the ALJ held another hearing on November 15, 2007 so that Meola and Fechner's testimony could reflect any new evidence from the tests.  (Tr. 124-44.)

Through interrogatories, the ALJ posed questions to Meola and Fechner describing Plaintiff's purported ailments.  In his interrogatory, Fechner confirmed that Plaintiff's neck and back pain was supported by the medical record.  (Tr. 869.)   Fechner further remarked that Plaintiff's alleged right knee pain was only partially supported by the medical evidence.  (Tr. 869.)   At the August 28, 2007 hearing, Fechner opined that "the medical record does not substantiate the intensity" of Plaintiff's alleged chest pain, dizziness, and lightheadedness.  (Tr. 106.)  Fechner also noted that "pain is subjective" and to account for Plaintiff's back problems, Fechner restricted Plaintiff to sedentary work.  (Tr. 111.)

At the November 15, 2007 hearing, Fechner testified that Plaintiff had chronic pulmonary asthma and non-obstructive coronary artery disease.  (Tr. 127-29.)   As a result, Fechner limited Plaintiff's sedentary work environment to restrict exposure to undue amounts of dust, odors, fumes, and known pulmonary irritants; and exposure to humidity, wetness, extreme cold, and extreme heat.  (Tr. 128-33.)

Based on the original limitations that Fechner gave in his interrogatory, the ALJ asked Meola, in his interrogatory, whether an individual with Plaintiff's limitations could perform either Plaintiff's past relevant work or other work.[4]  (Tr. 881-82.)  Meola explained that while

---

[4] The ALJ's interrogatory stated: "Assume an individual of the claimant's age, education, and vocational background.  This individual can lift and carry up to 10 pounds occasionally; sit a total of 6 hours in an 8-hour day;

the individual in the hypothetical would not be able to perform Plaintiff's past relevant work, he could work as a sorter, document preparer, assembler, or table worker, which are all unskilled, sedentary jobs that exist in the regional economy in the aggregate.  (Tr. 882.)  At the November 15, 2007 hearing, the ALJ added further limitations to the hypothetical and found that the "individual could never be exposed to humidity and wetness . . . undue amounts of dust, odors, fumes, and known pulmonary irritants, [or] . . . extreme cold and extreme heat."  (Tr. 135.) Meola stated that the "additional limitations would not interfere with the jobs [he] listed in the interrogatories." (Tr. 135.)

Relying on Meola's testimony, on December 6, 2007, the ALJ determined that Plaintiff was not disabled under the Act.  (Tr. 39.)  On July 25, 2008, the Appeals Council of the Social Security Administration denied Plaintiff's request for review of the ALJ's decision, rendering this decision the final decision of the Commissioner.  (Tr. 9-11.)  Plaintiff now appeals this final decision.

## APPLICABLE LEGAL STANDARDS

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).  To meet this definition, the claimant's "physical or mental impairment or impairments [must be] of such severity that he is not only

_____

sit for 1 hour at a time with 2 to 3 minutes of stretching each hour; stand/walk for 1 hour at a time; and stand/walk for a total of 2 hours in an 8-hour work day.  He can use his hands continuously for the following activities: reaching overhead, all other reaching, handling, fingering, feeling, pushing, and pulling.  He can use his feet for operation of foot pedals frequently.  He can never climb ladders of scaffolds.  He can occasionally do the following: climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  He can occasionally work at unprotected heights.  He can never be exposed to humidity or wetness, extreme cold or heat, or undue amounts of dust, odors, fumes, or known pulmonary irritants.  He can frequently work with moving mechanical parts or vibrations.  He could continuously work with the following: operating a motor vehicle and being around loud noise, such as heavy traffic.  He cannot do any activity that involves frequent moving of his head form side to side." (Tr. 881-82.) (emphasis omitted).

6

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 423(d)(2)(A). An impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Pursuant to the Act, the Commissioner established a "five-step sequential evaluation process" for assessing whether a claimant in a social security case is disabled. 20 C.F.R. § 404.1520. In step one, the ALJ decides whether the claimant is currently engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. § 404.1520(b). If the claimant is not engaged in such activity, then in step two the ALJ determines whether the claimant is suffering from a severe impairment. § 404.1520(c). If the impairment is not severe, the claimant cannot qualify for disability benefits and the ALJ's inquiry ends. *Id.* If the impairment is severe, then in step three the ALJ evaluates whether the evidence establishes that the claimant suffers from a listed impairment. § 404.1520(d). If the claimant suffers from a listed impairment, then the claimant is automatically entitled to disability benefits and the ALJ's inquiry ends. *Id.* If the claimant does not suffer such an impairment, then in step four the ALJ reviews whether the claimant retains the "residual functional capacity" to perform his past relevant work. § 404.1520(e).[5] If the claimant can perform their past relevant work, the claimant is not eligible for disability benefits and the ALJ's inquiry ends. *Id.* If claimant cannot perform such work, then in step five the ALJ considers whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work

---

[5] A claimant's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. § 404.1545. In making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. *Id.*

experience, and residual functional capacity.  § 404.1520(f).  If such work does exist, the claimant is not eligible for disability benefits.  *Id.*

During the first four steps of the analysis, the claimant has the burden of proof. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005) ("[i]n the first four steps, the burden is on the claimant").  At step five, the burden of proof shifts to the Commissioner.  *Rutherford*, 399 F.3d at 551 ("the burden . . . shifts to the Commissioner at step 5"); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) ("[t]he Commissioner bears the burden of proof for the last step").

In evaluating the ALJ's decision, we must affirm if the decision is supported by "substantial evidence."  42 U.S.C. § 405(g); *see also Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (the standard of review is "whether there is substantial evidence in the record" to support the ALJ's decision).  Substantial evidence is "more than a mere scintilla" and is generally thought of as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Significantly, this Court is required to give substantial weight and deference to the ALJ's findings.  *Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008) (holding that this Court must defer to the ALJ if his decision is supported by substantial evidence).

Nevertheless, the evaluation of the presence of substantial evidence is not merely a quantitative evaluation, but a qualitative one, "without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."  *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).  Additionally, even where substantial evidence is found to exist, this Court may still review the ALJ's decision to determine if it was based upon proper legal standards.  *Curtin v. Harris*, 508 F.Supp. 791, 795 (D.N.J. 1981) (holding that an ALJ's

undue emphasis on certain record evidence was in error because it was based on an "erroneous legal standard").

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). But, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

Plaintiff claims that the ALJ erred in her decision at step five of the evaluation process because the hypotheticals posed to the vocational expert failed to include Plaintiff's objective documentation and subjective complaints of pain.[6] This Court holds that the ALJ was at liberty to reject Plaintiff's complaints, given the medical evidence.[7]

A vocational expert's testimony can only be considered for the purpose of determining disability if "the question[s] accurately portray[] the claimant's individual physical and mental

---

[6] Typically, the adequacy of hypotheticals is challenged in two ways: (1) the ALJ failed to convey limitations it had determined were credibly established, or (2) the ALJ improperly determined certain limitations were not credibly established, in the first place. *Rutherford*, 399 F.3d at 554 n.8 (challenges to hypotheticals can be split into challenges of the adequacy of the residual functional capacity assessment and/or challenges of the hypotheticals themselves). Here, we are dealing with a challenge to the latter.

[7] In this instance, Plaintiff does not appeal the ALJ's determinations at the first four steps of the sequential analysis. (*See* Pl.'s Br.) In step 1, the ALJ properly found that Plaintiff had not performed substantial gainful activity since December 30, 2003. (Tr. 32-33.) In step 2, the ALJ properly classified Plaintiff's chronic COPD/asthma, chronic neck pain and spasm, coronary artery disease, and lumbar disc disease as severe, and Plaintiff's right renal stone and alleged knee pains as not severe. (Tr. 33.) At step 3, the ALJ concluded that none of Plaintiff's severe impairments "meet or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Tr. 33.) (citation omitted). At step 4, the ALJ determined that Plaintiff did not have the residual functional capacity to perform his past relevant work. (Tr. 37.) It should be noted that though the Plaintiff does not appeal the ALJ's ultimate determination at step 4 - that Plaintiff cannot perform his past relevant work - he does question the ALJ's residual functional capacity assessment, generally. (Pl.'s Br. 17.)

9

impairments."  *Burns v. Banhart*, 312 F.3d 113, 123 (3d Cir. 2002) (quoting *Podedworny*, 745 F.2d at 218); *see also Rutherford*, 399 F.3d at 554 (holding that vocational expert's testimony cannot be considered unless it "evaluate[s] claimant's particular impairments as contained in the record").   Furthermore, in drafting the questions, the ALJ need only include "credibly established" impairments that have been determined to affect Plaintiff's ability to work.[8]  *Covone v. Comm'r of Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) ("*Burns* requires that a hypothetical include all of the claimant's credibly established limitations, but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's [residual functional capacity]").  The ALJ has significant discretion when determining the credibility of either limitations that lack objective medical support or limitations that are medically supported but also contradicted by other evidence in the record.  *Rutherford*, 399 F.3d at 554.

In this case, the ALJ concluded that Plaintiff's allegations of total disability were not supported by objective medical evidence.  Specifically, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not entirely credible."  (Tr. 35.)  Additionally, based on the medical expert's testimony, the ALJ only credited subjective complaints of pain to the extent that a claimant would be able to perform work at a sedentary level.  (Tr. 36.)

Though Courts have held that an ALJ is required to give "great weight" to subjective complaints, they need only do so when those allegations are supported by competent medical evidence.  *See*, *e.g.*, *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) (quoting *Green v*

---

[8] A limitation is credibly established when it is "medically supported and otherwise uncontroverted in the record." *See Rutherford*, 399 F.3d at 554.

*Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984)); *Hartranft v. Apfel*, 181 F.3d. 358, 362 (3d Cir. 1999) (holding that subjective complaints must be supported by objective medical evidence). Furthermore, an ALJ may reject substantive claims of pain as long as he or she provides a thorough explanation of the reasoning behind the decision. *Shaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999) (ALJ can reject subjective testimony as not credible, but the "decision rationale must contain a thorough discussion and analysis of the objective medical [evidence] . . .") (emphasis omitted).

By crediting subjective complaints of pain to the extent that a claimant would be able to perform work at a sedentary level, the ALJ has accorded the complaints appropriate weight. *Simmonds*, 807 F.2d at 58 (holding that ALJ accorded proper weight to assertions of pain when, after refusing to find total disability, he credited them to the extent that the claimant would be able to perform work only at a sedentary exertional level). Additionally, the ALJ extensively discussed the evidence supporting her decision. She described Plaintiff's spinal and back problems from 2000 until 2006, noting that despite Plaintiff's ailments, he had "functional motion of the cervical spine, negative straight leg raising . . . no evidence of radicular symptoms or radiculopathy. . . . walked without a limp and had no difficulty with dressing, undressing, squatting or transfers." (Tr. 36.) The ALJ also cited medical opinions stating that Plaintiff's "range of motion and muscle power of the extremities was grossly intact and that no gross focal or sensory deficits were noted." (Tr. 36.) Moreover, the decision that Plaintiff's chest pain, dizziness and shortness of breath were not credible was based on Fechner's detailed testimony that "these complaints [were] not well supported by the evidence." (Tr. 36.) Finally, though the ALJ did not dispute the claim that Plaintiff did have some neck and back pain, the ALJ correctly

11

noted that Fechner evaluated Plaintiff's neck and back pain when deciding on Plaintiff's residual functional capacity and still held that Plaintiff could perform certain tasks.  (Tr. 36.)

In summary, because the ALJ properly concluded that the Plaintiff's subjective claims of constant and unrelenting pain were not fully credible, it was not error to omit those claims from the vocational expert hypotheticals.

**CONCLUSION**

For the reasons stated above, the ALJ's decision is AFFIRMED.


**SO ORDERED.**

s/ Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**